**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**SOUTHERN DIVISION**
**LONDON**

**CIVIL ACTION NO. 07-318-JBC**

**CHARLES BAKER,**                                                            **PLAINTIFF,**

**V.**                         **MEMORANDUM OPINION AND ORDER**

**MICHAEL J. ASTRUE, COMMISSIONER,**
**SOCIAL SECURITY ADMINISTRATION,**                          **DEFENDANT.**

**\* \* \* \* \* \* \* \* \* \* \***

        This matter is before the court upon cross-motions for summary judgment on

the plaintiff's appeal of the Commissioner's denial of his application for Disability

Insurance Benefits and Supplemental Security Income (DE 10, 11).  The court,

having reviewed the record and being otherwise sufficiently advised, will deny the

plaintiff's motion and grant the Commissioner's motion.

        **I.  Overview of the Process**

        Judicial review of the Administrative Law Judge's decision to deny disability

benefits is limited to determining whether there is substantial evidence to support

the denial decision and whether the Secretary properly applied relevant legal

standards.  *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th

Cir. 1989) (citing *Richardson v. Perales*, 402 U.S. 389 (1971)).  "Substantial

evidence" is "more than a scintilla of evidence, but less than a preponderance; it is

such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion."  *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.

1994).   The court does not try the case *de novo* or resolve conflicts in the evidence; it also does not decide questions of credibility.  *See id.*  Rather, the ALJ's decision must be affirmed if it is supported by substantial evidence, even though the court might have decided the case differently.  *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis.  At Step 1, the ALJ considers whether the claimant is performing substantial gainful activity; at Step 2, the ALJ determines whether one or more of the claimant's impairments are "severe"; at Step 3, the ALJ analyzes whether the claimant's impairments, singly or in combination, meet or equal a listing in the Listing of Impairments; at Step 4, the ALJ determines whether the claimant can perform past relevant work; and, finally, at Step 5 – the step at which the burden of proof shifts to the Commissioner – the ALJ determines, once it is established that the claimant cannot perform past relevant work, whether significant numbers of other jobs exist in the national economy which the claimant can perform.  *See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); 20 C.F.R. § 404.1520.  If it is determined during the process that the claimant is not disabled, then the analysis ceases at that step.  *Mowery v. Heckler*, 771 F.2d 966, 969 (6th Cir. 1985); 20 C.F.R. § 404.1520(a)(4).

## II.  The ALJ's Determination

The claimant is a forty-four-year-old male with a high-school education and

2

prior work experience as a heating, venting, and air-conditioning installer and as a carpenter's helper.  AR 93-96.  The claimant alleges disability beginning on March 25, 2002, as a result of a broken sternum, low back pain, high blood pressure, anxiety and depression, swelling in both hands, allergies, and cervical and bilateral shoulder pain.  AR 108.  The plaintiff filed an application for Disability Insurance Benefits ("DIB") on August 18, 2005, and an application for Supplemental Security Income ("SSI") on August 15, 2005, both of which were denied initially and on reconsideration.  AR 17.  After a hearing held on October 18, 2006, Administrative Law Judge ("ALJ") James P. Alderisio determined that the plaintiff did not suffer from a disability as defined by the Social Security Act.  AR 17-23.  At Step 1, the ALJ determined that the plaintiff had not engaged in substantial gainful activity.  At Step 2, the ALJ found that the plaintiff's fractured sternum, lower back pain, high blood pressure, anxiety, depression, and cervical and shoulder pain were severe impairments when considered in combination.  The ALJ then determined that the plaintiff's impairments did not meet or equal a listing in the Listing of Impairments at Step 3.  At Step 4, the ALJ found that the plaintiff was unable to perform his past relevant work.  The ALJ concluded at Step 5, however, that the plaintiff could perform a significant number of other jobs in the national economy at the medium exertional level.  AR 19-22.  The plaintiff submitted additional evidence to the Appeals Council that was incorporated into the record.  AR 9.  On June 14, 2007, the Appeals Council denied the plaintiff's request for review of the ALJ's decision,

*see* AR 5-8, and the plaintiff then commenced this action.

### III.  Legal Analysis

The claimant argues that the ALJ's determination was not supported by substantial evidence for the following reasons: (1) the ALJ failed to consider all the medical evidence; (2) the ALJ erred in his determination of the plaintiff's credibility; and (3) the ALJ failed to show that there are jobs in the national economy which the claimant can perform.  The court will address each of these arguments in turn.

### A.  The ALJ's Use of the Medical Evidence

The claimant argues that only part of the medical evidence was used by the ALJ.  Specifically, the claimant asserts that the ALJ did not consider the evidence from the claimant's physician, Dr. C.A. Moore, or the records from Middlesboro Appalachian Regional Hospital in making his determination.  According to the claimant, the ALJ would have found him disabled if he had considered all the evidence in the record.  The claimant carries the burden of proving that the medical and other evidence shows his inability to work.

The ALJ stated that he carefully considered the entire record when forming the claimant's residual functional capacity ("RFC"), and he incorporated specific limitations into the RFC based on the claimant's impairments.[1]  AR 19-20.  The ALJ

---

[1] According to the ALJ, the claimant has the RFC "to perform medium exertional level work involving no climbing of ladders, ropes or scaffolds.  The work must not involve no more than occasional overhead reaching.  The claimant should have only limited but satisfactory contact with co-workers, the general public and supervisors.  The claimant can occasionally lift and carry fifty pounds and frequently lift and carry twenty-five pounds.  The claimant can stand and walk six

4

specifically noted that in determining the claimant's RFC and his mental limitations, he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."  AR 20.

The claimant argues that he "has treated with Dr. C.A. Moore for over 2 years for his back pain and neck pain."  DE 10, at 3.  The opinions of a treating physician are entitled to significant deference.  *See, e.g., Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *Farris v. Sec. of Health and Human Servs.*, 773 F.2d 85, 90 (6th Cir. 1985).  While a treating physician's medical opinions can have controlling weight, medical opinions "are statements from physicians . . . that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [his] symptoms, diagnosis and prognosis, what [he] can still do despite impairment(s), and [his] physical or mental restrictions."  20 C.F.R. §404.1527(a)(2).

The plaintiff states that Dr. Moore's treatment records show that the claimant's back pain worsened in severity at each visit and that he suffered from depression and anxiety.  However, the plaintiff did not identify Dr. Moore's opinions, and the record is also unclear regarding the doctor's diagnosis, prognosis, or any restrictions he placed on the claimant.  *See* AR 142-45.  The claimant presented additional evidence to the Appeals Council, including three more pages of

---

hours out of an eight-hour . . . workday and sit two hours out of an eight-hour workday."  AR 20.

5

Dr. Moore's illegible treatment records.  AR 220-222.  However, the claimant does not argue that the new evidence provides a basis for remand, and the Appeals Council concluded that the additional evidence was consistent with the evidence previously reviewed by the ALJ.  The record does not include any opinions by Dr. Moore that the ALJ could have considered, relied upon, or given any weight.  Thus, the ALJ did not err by not considering the opinions of Dr. Moore, because there were no such opinions offered.

The plaintiff also asserts that the ALJ did not consider the medical evidence contained in the Middlesboro Appalachian Regional Hospital ("ARH") records, including from a November 20, 2005, visit, which he claims state that the claimant had a hernia.  The standard for reviewing the ALJ's decision is not whether evidence exists in the record that conflicts with his findings, but whether there is substantial evidence that supports his decision.  *Cutlip*, 25 F.3d at 286.  The claimant does not cite to a specific page of the record, and the ARH records do not include any opinions regarding the claimant's limitations or restrictions.  AR 146-69.  There is a note on a treatment record that appears to state that the claimant has a right groin hernia, but there is no indication of a diagnosis or opinion from the doctor regarding the resulting limitations on the claimant's functional abilities.  AR 150.  In contrast to the assertions of the plaintiff that the ALJ did not review the ARH records, the ALJ actually cites to the ARH test results when discussing the

6

objective medical evidence in the record.  AR 20.[2]

With regard to the claimant's mental impairments, the ALJ examined the
medical evidence in the record.  The claimant argues that the ALJ did not accept
that the claimant was moderately limited in his ability to maintain attention and
concentration for extended periods.  Instead, the ALJ found that the claimant's
mental residual functional capacity ("RFC") was mild.  Dr. Spangler, a consulting
physician, found that the claimant's "mental conditions are stable," and that his
"medication and treatment compliance are reported to be adequate."  AR 137.  He
further noted that the claimant appeared to be functioning in the low average range
of intelligence.  AR 138.  The claimant's social skills were adequate and he related
well with the examiner.  AR 139.  Dr. Spangler found that the claimant needed
mental health treatment for his mild to moderate depression and anxiety, and that
his inability to sustain concentration and persistence was mild to moderate due to
erratic concentration.  AR 137.  This evidence is consistent with the ALJ's
determination that the claimant has mild difficulty in his activities of daily living and
moderate difficulty with regard to social functioning.  AR 20.  The ALJ also noted
that the claimant experienced mild difficulties with regard to concentration and
persistence, and experiences no episodes of decompensation.  *Id.*

There exists substantial evidence in the record to support the medical

------

[2] The ALJ's decision cites to Exhibit B5F, which according to the list of
exhibits is the "Emergency/Outpatient Record dated 1/29/04 to 11/20/05 from
Middlesboro Appalachian Regional Hospital."  AR 3.

7

conclusions of the ALJ, and the ALJ did not err in his evaluation of the objective medical evidence.

### B.  The ALJ's Credibility Assessment

The claimant argues that the ALJ erred in his determination of the claimant's credibility and that the medical evidence substantiates the severity of his alleged pain.  The claimant testified that he has disabling pain and asserts that the ALJ overestimated the claimant's ability to perform work activities.  The Commissioner is required to consider all of a claimant's symptoms, including pain, in determining whether he is disabled.  20 C.F.R. § 404.1529(a).  Before these symptoms will lead to a finding of disability, however, medical signs must exist which show the claimant has an impairment which could reasonably be expected to produce the symptoms alleged.  20 C.F.R. § 404.1529(b).  When such medical signs are present, the Commissioner must then evaluate how the intensity and persistence of the symptoms affect the claimant's ability to work.  20 C.F.R. § 404.1529(c); *see also Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994) (citing *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986)).  In performing this inquiry, the ALJ must consider the objective medical evidence, evidence of the claimant's daily activities, the frequency and intensity of the claimant's pain, any precipitating or aggravating factors, any medications taken to alleviate the pain, and any other measures taken to remedy the claimant's pain. *See Felisky*, 35 F.3d at 1039-40; 20 C.F.R. § 404.1529(c)(3).  Although an ALJ's

credibility findings are to be accorded significant deference, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

In this case, the ALJ considered the claimant's allegations of pain and agreed that "the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms." AR 21. However, the ALJ found "that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." *Id.* The medical evidence in the record did not confirm the severity of the claimant's alleged symptoms. The ALJ found that the claimant's allegations were inconsistent with the medical record and with his activities of daily living.

There is substantial medical evidence in the record to support the ALJ's findings. An MRI scan performed on July 16, 2005, showed minimal diffuse broad-based disk bulges, and no focal disk protrusion or nerve root impingement. AR 156. An x-ray of the claimant's cervical spine, including three views for pain, showed that the cervical spine was normal in alignment, there was no fracture or subluxation seen, the disc spaces were preserved, and the prevertebral soft tissues were normal. AR 152. X-rays were also taken of the claimant's left ribs for history of chest pain. AR 155. These x-rays showed nondisplaced fractures of three ribs, with no underlying pleural effusion, collapse or pneumothorax seen. *Id.* A state-agency physician, Dr. C. Hernandez, reviewed these test results and concluded that

9

the claimant's physical impairments were non-severe.  AR 170.  The plaintiff did not present any evidence from a treating or examining physician to rebut that conclusion.

Dr. Mengesha, a consulting physician, found "no physical evidence for significant restrictions in the patient's tolerance for stooping, bending, reaching, sitting, standing, moving about, lifting, carrying, handling objects, or ability to travel."  AR 135.  Dr. Mengesha stated that the claimant made a very poor effort during his examination, which could explain the claimant's inability to complete many of the musculoskeletal tests.  AR 134; *see Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) ("efforts to impede accurate testing of [the claimant's] limitations supports the ALJ's determinations as to [his] lack of credibility").  The doctor noted that the claimant did not have any difficulty getting on and off the examining table.  *Id.*  Dr. Mengesha's opinion was that the claimant did not have any motor deficits, and he found no evidence of nerve root compression.  *Id.*  Thus, the ALJ properly concluded that the medical evidence did not support the claimant's allegations of disabling pain.

Evidence in the record of the claimant's daily activities also supports the ALJ's findings.  "As a matter of law, an ALJ may consider household and social activities in evaluating complaints of disabling pain."  *Blacha v. Sec'y of Health & Human Servs.,* 927 F.2d 228, 231 (6th Cir. 1990).  The record shows that the claimant assists with grocery shopping, laundry, and yard work.  AR 138.

10

Additionally, the claimant helps with the dishes and watches television.  AR 71, 74.  The ALJ's assessment of the plaintiff's credibility and pain was based on substantial evidence, including the ALJ's assessment of the claimant's testimony, his daily activities, and the medical record; therefore, the court will not disturb it.

### C.  Other Work Exists that the Claimant Can Perform

It is the Commissioner's burden to show that the claimant is capable of performing work which exists in significant numbers in the national economy, given his RFC and vocational factors.  20 C.F.R. §§ 404.1560(b)-(c), 416.960(b)-(c).  "To meet this burden, there must be 'a finding supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs.'"  *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (quoting *O'Banner v. Sec'y of Health, Educ. & Welfare*, 587 F.2d 321, 323 (6th Cir. 1978)).  The required evidence can be shown by relying on the testimony of a vocational expert ("VE") as long as the hypothetical question given the VE accurately portrays the claimant's physical and mental impairments.  *Id.* (citing cases).

In this case the ALJ took testimony from a VE and determined that the claimant was able to perform the requirements of representative occupations, such as dining room attendant, inspector, and production packager, which exist in significant numbers in the national and regional economies.  AR 22-23, 248-49.  The VE identified these jobs as ones that the claimant could perform with the

11

functional limitations associated with his impairments.  AR 248-49.  The ALJ's hypothetical question to the VE directly incorporated the ALJ's RFC finding and included an individual with the claimant's past work experience.  AR 248.  The ALJ limited the hypothetical to medium work and also included restrictions specific to the claimant's impairments, including his psychological limitations.  *Id.*  The ALJ's questions directed to the VE accurately portrayed the claimant's limitations as found by the ALJ, and the VE's testimony showed that other work exists in significant numbers in the national economy that the claimant can perform.  Therefore, the ALJ properly determined that the claimant is not disabled for purposes of obtaining DIB or SSI.

**IV. Conclusion**

Accordingly,

**IT IS ORDERED** that the Commissioner's motion for summary judgment (DE 11) is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff's motion for summary judgment (DE 10) is **DENIED**.

Signed on  September 26, 2008     

JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY

12